No. 81-132

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

IN THE MATTER OF THE ESTATE OF
DAVID LARRY HARBAUGH, Deceased.

_____

Appeal from: District Court of the Sixteenth Judicial District,
In and for the County of Garfield
Honorable A. B. Martin, Judge presiding.

Counsel of Record:

For Appellant:

Nickolas C. Murnion argued, Jordan, Montana

For Respondent:

B. Miles Larson argued, Stanford, Montana

_____

Submitted: October 23, 1981

Decided: January 14, 1982

Filed: JAN 14 1982

Thomas J. Kearney Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The Garfield County Bank (Bank) of Jordan, Montana, filed a creditor's claim against the estate of David Larry Harbaugh (Larry Harbaugh). The estate disallowed the claim. The Bank petitioned the District Court of the Sixteenth Judicial District, Garfield County, Montana, for allowance of the claim. The petition was denied and the Bank appealed. We reverse the District Court.

In May, 1976, Robert Baugh, Alta Baugh, and Larry Harbaugh signed a promissory note with the Garfield County Bank in the amount of $15,000. The note was payable in monthly installments of $198.23 until 1986, when the balance was due. The promissory note contained the following language:

> "Upon any default in the payment of interest or principal, or if the holder hereof at any time in good faith believes that the prospect of due and punctual payment of this note is impaired, this note shall become immediately due and payable at the option of the holder hereof."

The proceeds of the note were used by Robert Baugh and Alta Baugh to build a basement, well, and sewer on ten acres of land held in joint tenancy by Paul Harbaugh, Cornelia Harbaugh and Larry Harbaugh. Paul Harbaugh and Cornelia Harbaugh are the parents of Larry Harbaugh. The ten acres of land were leased to Robert Baugh pursuant to a written lease for a term of ninety-nine years. The lease contained a clause specifically forbidding the subletting of the premises by Robert Baugh without the prior consent of the lessors. The land on which the basement, well and sewer are located is in the midst of the ranch owned by Paul Harbaugh and Cornelia Harbaugh.

At the time the loan was made, Rob rt Baugh and Larry Harbaugh intended to become partners in the ranching business on the Harbaugh ranch. Robert Baugh initially approached the Harbaughs about obtaining the loan and was directed to go to the Garfield County Bank. The Garfield County Bank insisted that Larry Harbaugh cosign the promissory note since Robert Baugh was unable to give any security for the note. After the basement, well and sewer were built, Robert Baugh and Larry Harbaugh decided not to become partners and Robert Baugh moved to Jordan.

Larry Harbaugh died on November 5, 1979, and the probate of the estate was opened on November 26, 1979. On December 6, 1979, the first notice to creditors was published in the Jordan Tribune. The Garfield County Bank filed a claim against the estate of Larry Harbaugh on February 13, 1980. The claim was based upon the promissory note and was in the amount of $11,054.78. The creditor's claim was disallowed on June 23, 1980, and a petition for allowance of the claim was filed by the Garfield County Bank on July 25, 1980. Hearing on the petition was had on January 6, 1981. The District Court refused to grant the Bank's petition for allowance of the claim, and this appeal followed.

The Garfield County Bank has raised two issues in its appeal:

(1) Did the death of Larry Harbaugh establish a basis for invoking the acceleration clause of the promissory note?

(2) Did the District Court err by completely exonerating the estate of Larry Harbaugh from liability on the note?

We find that the first issue is not properly before this Court. The Bank argued both at the hearing below and on appeal that section 30-1-208, MCA, and the acceleration clause of the note gave the Bank the right to declare the

-3-

note due and payable if the Bank had a good faith belief that the death of Larry Harbaugh had impaired the prospect of payment of the note. However, neither the claim against the estate nor the petition for allowance of claim requested more than the establishment of the existence of the debt created by the signing of the promissory note. The Bank did not ask that the entire balance be declared due and owing. Therefore, the first issue raised by the Bank is not properly before us and we decline to rule upon it.

As to the second issue, we find that the District Court erred by issuing its order which, in effect, completely exonerated the Harbaugh estate from any liability under the note. Since Harbaugh signed the instrument for the purpose of lending his name to another party to the instrument, he was an accommodation maker. Section 30-3-415(1), MCA.

In Montana an accommodation maker is primarily liable on the instrument which he signs.

> "Subsection (1) recognizes that an accommodation party is always a surety (which includes a guarantor), and it is his only distinguishing feature. He differs from other sureties only in that his liability is on the instrument and he is a surety for another party to it. His obligation is therefore determined by the capacity in which he signs. An accommodation maker or acceptor is bound on the instrument without any resort to his principal, while an accommodation indorser may be liable only after presentment, notice of dishonor and protest." Official Comment, section 30-3-415, MCA, (Annotations) (emphasis supplied).

An accommodation maker was also primarily liable on the instrument prior to the adoption of the Uniform Commercial Code. As this Court said in Merchants' Nat. Bank v. Smith (1921), 59 Mont. 280, 196 P. 523:

> ". . . the fact that Lee signed the note without receiving any part of the consideration, and for the purpose only of lending his name to Smith, does not alter his situation. He

> is liable notwithstanding the bank, at the
> time it took the note, knew him to be only an
> accommodation party. . . In other words, the
> fact that he is an accommodation maker gives
> rise to a duty on his part to the holder for
> value, no greater, or less or different, than
> that imposed upon a maker who received value."
> 59 Mont. at 292, 196 P. at 525.

The death of Larry Harbaugh did not extinguish his obligation. Neither the U.C.C., nor the statutes on guaranty and suretyship, provide that death results in the discharge or exoneration of one in Larry Harbaugh's position. See sections 30-3-601, MCA; Title 28, chapter 11, part 2, MCA; and Title 28, chapter 11, part 4, MCA. Indeed, the common law rule is that death does not exonerate a surety. U.S. ex rel. Wilhelm v. Chain (1937), 300 U.S. 31, 57 S.Ct. 394, 81 L.Ed. 487.

The District Court should have found that the estate owed the balance under the terms of the promissory note, that obligation being as an accommodation maker. In accordance with section 72-3-805(2), the court should have allowed the claim in full. We note that such allowance does not necessarily require payment in full or in part by the estate.

The payment of claims is provided for in sections 72-3-808, 72-3-814 and 72-3-815, MCA. There are a number of alternatives available to the personal representative with regard to payment. As an example, the personal representative may seek to compromise the obligation of the estate. The personal representative, of course, may pay the same in cash. In this instance, it appears that section 72-3-814(2) is particularly appropriate. Under that section, the personal representative could petition the court in a special proceeding for that purpose to arrange for possible payment on the happening of the contingency that the primary maker defaults

in payment, with such payment to be secured by a mortgage or other security on estate property. Such an arrangement would allow distribution of assets without a required advance payment of the note, and yet would give the Bank the security which is reasonably necessary if there is to be a postponement in time of payment. Such a procedure would allow the makers Robert and Alta Baugh to continue to make the payments for which they are responsible.

The order of the District Court disallowing the claim is reversed. The District Court is directed to enter its order allowing the claim, subject to the further determination of the manner of payment in accordance with the probate procedures.

_____
Justice

We Concur:

_____
Chief Justice

_____
_____
_____
Justices

I concur in the result.

_____
Chief Justice

-6-